**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
In re:

JOHN F. CAMPBELL,

           Debtor.
--------------------------------------------------------------x
RADIANCE CAPITAL RECEIVABLES
TWELVE LLC,

           Plaintiff,

      -against-

JOHN F. CAMPBELL,

           Defendant.
--------------------------------------------------------------x

Chapter 7

Case No. 23-35668 (KYP)

Adv. Pro. No. 24-09009 (KYP)

**MEMORANDUM DECISION AND ORDER (I) GRANTING IN PART AND**
**DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,**
**(II) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT, AND (III) MODIFYING THE AUTOMATIC**
<u>**STAY TO ALLOW PROSECUTION OF THE SANCTIONS MOTION**</u>

**APPEARANCES:**

JOHN F. CAMPBELL
*Pro Se Defendant*
60 Campbell Road
Livingston Manor, NY 12758

MAPLES & FONTENOT, LLP
*Counsel to Plaintiff*
P.O. Box 1281
Mobile, AL 36633
By:    Gilbert Larose Fontenot, Esq.
         Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## **INTRODUCTION**

In October 2013 and January 2014, the predecessor to judgment-creditor Radiance Capital Receivables Twelve LLC ("Radiance Capital") obtained the entry of charging orders (together, the "Charging Orders") granting it liens on John F. Campbell's ("Debtor") interest in numerous limited liability companies (collectively, the "LLCs"). Akin to garnishment orders, the Charging Orders required the LLCs to make distributions to Radiance Capital that would otherwise be payable to the Debtor until Radiance Capital's money judgment was paid in full.

The LLCs have not made a single payment under the Charging Orders. Instead, the LLCs – and one LLC in particular, Whigham Place Property Management, LLC ("Whigham Place") – made dozens of payments in violation of the Charging Orders directly to the Debtor or for the Debtor's benefit. In 2023, Radiance Capital moved in the United States District Court for the Southern District of Alabama ("Alabama District Court") for sanctions against the Debtor citing numerous violations of the Charging Orders, and the Debtor responded by filing a Chapter 7 bankruptcy petition in this Court.

In this adversary proceeding, Radiance Capital seeks, among other things, a determination that certain debts owed to it are nondischargeable under section 523(a)(2)(A) and (a)(6) of the Bankruptcy Code. Radiance Capital and the Debtor have

now each moved for summary judgment ("Radiance Capital Motion"[1] and "Debtor

Motion,"[2] and together, the "Motions") and filed opposition to the other side's motion.[3]

For the reasons set forth herein, the Court finds that any monetary sanctions

owed to Radiance Capital stemming from Debtor's multiple violations of the Charging

Orders are nondischargeable as debts for "willful and malicious injury" under section

523(a)(6) of the Bankruptcy Code.  However, the Alabama District Court – as the court

that issued the Charging Orders – is the appropriate court with jurisdiction to issue a

contempt order and determine monetary sanctions against the Debtor.  Therefore, the

Court will modify the automatic stay to allow Radiance Capital to continue prosecution

of the Sanctions Motion (defined *infra*) in the Alabama District Court.

## **JURISDICTION**

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and

1334 and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012

(Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of

the Southern District of New York.  The issues presented by the Motions are core

proceedings under 28 U.S.C. § 157(b)(2)(I) and (K).  This Court has exclusive

---

[1]     *See Radiance's Memorandum in Support of Motion for Summary Judgment*, dated July 29, 2025 ("Radiance Brief") (ECF Doc. # 84), and *Radiance's Reply to Campbell's Response to Radiance's Motion for Summary Judgment*, dated Aug. 19, 2025 ("Radiance Reply") (ECF Doc. # 96).  "ECF Doc. # _" refers to documents filed on the electronic docket of this adversary proceeding.  "ECF Main Case Doc. # _" refers to documents filed on the electronic docket of the Debtor's Chapter 7 bankruptcy case.  References to documents filed on other dockets will include the case name or case number.  "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system.

[2]     *See Defendant's Motion for Summary Judgment*, docketed on July 29, 2025 ("Debtor Brief") (ECF Doc. # 85), and *Defendant's Surreply*, docketed on Aug. 19, 2025 ("Debtor Reply") (ECF Doc. # 98).

[3]     *See Radiance's Memorandum of Law in Opposition to Campbell's Motion for Summary Judgment*, dated Aug. 12, 2025 ("Radiance Opposition") (ECF Doc. # 90), and *Defendant's Rebuttal of Plaintiff's Motion for Summary Judgment*, docketed on Aug. 12, 2025 ("Debtor Opposition") (ECF Doc. # 89").

jurisdiction over nondischargeability claims brought under section 523(a)(2), (4), and (6) of the Bankruptcy Code. *Busche v. Grover* (*In re Grover*), 667 B.R. 243, 256 (Bankr. S.D.N.Y. 2025) (citation omitted); *see also* FED. R. BANKR. P. 4007 advisory committee's note to subdivision (c) ("The bankruptcy court has exclusive jurisdiction to determine dischargeability [under section 523(a)(2), (4) or (6)].  If a complaint is not timely filed, the debt is discharged.  See § 523(c).").[4]

## **BACKGROUND**[5]

## A.    **The Alabama Action and the Charging Orders**

---

[4]    Section 523(c) of the Bankruptcy Code provides that "the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4) or (6), as the case may be, of subsection (a) of this section."  Federal Bankruptcy Rule 4007(c), in turn, requires that "a complaint to determine whether a debt is dischargeable under § 523(c) must be filed within 60 days after the first date set for the § 341(a) meeting of creditors."

[5]    The Court has reviewed the following documents submitted with the Motions:

- *Plaintiff's Statement of Undisputed Facts Under Local Bankruptcy Rule 7056-1*, dated July 29, 2025 ("Radiance Fact Statement") (ECF Doc. 83) and exhibits appended thereto;

- *Declaration of Jody Burleigh in Support of Summary Judgment*, dated July 29, 2025 ("Burleigh Declaration") (ECF Doc. # 83-32);

- *Affidavit of Gilbert L. Fontenot*, dated Aug. 12, 2025 ("Fontenot Affidavit") (ECF Doc. # 91) and exhibits appended thereto;

- *Debtor's Statement of Material Facts*, docketed on July 29, 2025 ("Debtor Fact Statement") (ECF Doc. # 85 at ECF pp. 14-15) and exhibits appended thereto;

- *Plaintiff's Statement of Disputed Facts in Opposition to Campbell's Motion for Summary Judgment*, dated Aug. 12, 2025 ("Radiance Fact Response") (ECF Doc. # 92) and exhibits appended thereto;

- *Disputed Facts Presented by Plaintiff*, docketed on Aug. 12, 2025 ("Debtor Fact Response") (ECF Doc. # 89 at ECF p. 16) and exhibits appended thereto (exhibit 5 was docketed at ECF Doc. # 93); and

- Exhibits appended to the Radiance Opposition, Radiance Reply, and Debtor Reply.

This section includes references to judicial documents and court records filed on dockets of other cases.  The Court may take judicial notice of such documents and records.  *In re Mirena IUD Prods. Liab. Litig.*, 29 F. Supp. 3d 345, 350 (S.D.N.Y. 2014); *accord In re Mehl*, 660 B.R. 353, 359 (Bankr. S.D.N.Y. 2024); *see* FED. R. EVID. 201.

On or about May 22, 2007, the Debtor borrowed $305,000.00 from Vision Bank secured by a mortgage on certain non-homestead real property.[6]  The Debtor subsequently defaulted on the note.  On April 23, 2013, SE Property Holdings, LLC ("SEPH"), as successor by merger with Vision Bank, commenced an action in the Alabama District Court captioned *SE Property Holdings, LLC v. Campbell*, Civil Action No. 13-238 ("Alabama Action") seeking repayment of the outstanding amount.  (ECF Alabama Action Doc. # 1 (complaint in Alabama Action).)  SEPH moved for summary judgment, and the Alabama District Court granted SEPH's motion on September 9, 2013.  (ECF Alabama Action Doc. # 18 (summary judgment order).)  On the same day, the Alabama District Court entered a corresponding *Final Judgment* ("Judgment") (ECF Alabama Action Doc. # 19) requiring the Debtor to pay SEPH $317,135.00.

To facilitate payment of the Judgment, SEPH moved for entry of an order charging the Debtor's financial interest in certain limited liability companies (*i.e.*, the LLCs), and the Alabama District Court granted SEPH's motion by entering the *Charging Order Against John F. Campbell* on October 21, 2013 ("First Charging Order") (ECF Alabama Action Doc. # 23).  The First Charging Order required the charged LLCs to make distributions to SEPH that would otherwise be payable to the Debtor as follows:

> **IT IS ORDERED** that a lien is charged against the financial interests of [the Debtor] in the [LLCs] in the amount of $317,135.00, being the final judgment of September 9, 2013, rendered in favor of [SEPH] and against [the Debtor], plus accrued interest and costs, and that [the LLCs] are Ordered to distribute to [SEPH] any income, officer's fees, bonuses, distributions, salaries or dividends paid or otherwise conveyed to [the Debtor] by reason of any interest he owns in the [LLCs] until [SEPH] is satisfied in full.

---

[6]     Copies of the note and mortgage are appended to the Radiance Fact Statement as Exhibits 1 and 2, respectively.

(First Charging Order at 1-2.)  The First Charging Order further required the LLCs to notify SEPH each time a distribution subject to the order was made.  (*Id*. at 2.)

On January 21, 2014, SEPH moved for a second order charging the Debtor's interests in additional LLCs, and the Alabama District Court granted SEPH's motion by entering the *Second Charging Order Against John F. Campbell* on January 21, 2014 ("Second Charging Order") (ECF Alabama Action Doc. # 40), which was substantively identical to the First Charging Order.[7]

On December 20, 2018, SEPH assigned the Judgment to Radiance Capital,[8] and, on November 20, 2020, Radiance Capital replaced SEPH as plaintiff in the Alabama Action.  (ECF Alabama Action Doc. # 47 (order granting motion to substitute party).)

To date, none of the LLCs have reported any distributions as being subject to the Charging Orders, no payments have been made by any LLC to SEPH or Radiance Capital, and the Debtor remains indebted to Radiance Capital for the entire Judgment. (Burleigh Declaration ¶¶ 19, 21.)

## B.   Transfers From the LLCs

Between June 2017 and December 2022, two LLCs – Whigham Place and Antilles GP, LLC ("Antilles GP") – made the following thirty-five (35) distributions that, according to Radiance Capital, violated the Charging Orders:

---

[7]   The LLCs subject to the Charging Orders are: Whigham Place; RE Management, LLC; 101 Webster Circle Property Management, LLC; Jackson Street Property Management, LLC; FP Management, LLC; Slidell Property Management, LLC; Salt Pond Investments Limited; DineroMax S.A. de C.V.; Credit Suisse First Boston Fund Investment, 1997, LP; Murray Oregon Equities, LLC; Sierra Development, LLC; Antilles Capital, LLC; Antilles GP, LLC; Antilles Investors, LP; Antilles Offshore Investors, Ltd; Antilles Intermediate LP; and Antilles Master Fund, LP.  (First Charging Order at 1; Second Charging Order at 1.)

[8]   The bill of sale evidencing the assignment is appended to the Radiance Fact Statement as Exhibit 13.

|    | DATE | TRANSFEROR | TRANSFEREE | METHOD | AMOUNT |
|----|------|------------|------------|--------|--------|
| 1  | 6/12/2017 | Antilles GP | Marina Campbell | Wire | $35,508.73 |
| 2  | 3/5/2018 | Whigham Place | Debtor | Wire | $5,770.00 |
| 3  | 3/19/2018 | Whigham Place | Debtor | Wire | $6,620.00 |
| 4  | 4/24/2018 | Whigham Place | Debtor | Wire | $5,420.00 |
| 5  | 5/22/2018 | Whigham Place | Debtor | Wire | $5,870.50 |
| 6  | 6/22/2018 | Whigham Place | Debtor | Wire | $5,920.00 |
| 7  | 7/24/2018 | Whigham Place | Debtor | Wire | $6,270.00 |
| 8  | 10/6/2018 | Whigham Place | Debtor | Wire | $11,020.00 |
| 9  | 10/25/2018 | Whigham Place | Debtor | Wire | $6,520.00 |
| 10 | 12/5/2018 | Whigham Place | Debtor | Wire | $5,620.00 |
| 11 | 12/26/2018 | Whigham Place | Debtor | Wire | $7,020.00 |
| 12 | 1/28/2019 | Whigham Place | Clairise Court | Check | $7,100.00 |
| 13 | 2/28/2019 | Whigham Place | Clairise Court | Check | $7,000.00 |
| 14 | 4/2/2019 | Whigham Place | Clairise Court | Check | $7,500.00 |
| 15 | 4/26/2019 | Whigham Place | Clairise Court | Check | $7,000.00 |
| 16 | 6/4/2019 | Whigham Place | WB Property | Check | $7,000.00 |
| 17 | 7/18/2019 | Whigham Place | Clairise Court | Check | $7,690.00 |
| 18 | 7/29/2019 | Whigham Place | Clairise Court | Check | $7,100.00 |
| 19 | 9/9/2019 | Whigham Place | Clairise Court | Check | $4,000.00 |
| 20 | 9/9/2019 | Whigham Place | WB Property | Check | $3,000.00 |
| 21 | 10/1/2019 | Whigham Place | WB Property | Wire | $7,000.00 |
| 22 | 10/29/2019 | Whigham Place | WB Property | Check | $5,000.00 |
| 23 | 12/27/2019 | Whigham Place | WB Property | Wire | $8,800.00 |
| 24 | 1/2/2020 | Whigham Place | WB Property | Wire | $6,750.00 |
| 25 | 1/21/2020 | Whigham Place | WB Property | Check | $6,600.00 |
| 26 | 1/30/2020 | Whigham Place | WB Property | Check | $7,000.00 |
| 27 | 2/25/2020 | Whigham Place | WB Property | Check | $6,800.00 |
| 28 | 4/22/2020 | Whigham Place | Debtor | Check | $1,000.00 |
| 29 | 4/22/2020 | Whigham Place | Debtor | Check | $1,500.00 |
| 30 | 5/27/2020 | Whigham Place | Clairise Court | Wire | $10,000.00 |
| 31 | 10/31/2022 | Whigham Place | JP Morgan | Check | $27,125.06 |
| 32 | 10/31/2022 | Whigham Place | JP Morgan | Check | $14,928.54 |

| | DATE | TRANSFEROR | TRANSFEREE | METHOD | AMOUNT |
|---|---|---|---|---|---|
| 33 | 10/31/2022 | Whigham Place | JP Morgan | Check | $77,363.07 |
| 34 | 11/25/2022 | Whigham Place | Able Builders | Check | $40,000.00 |
| 35 | 12/5/2022 | Whigham Place | JP Morgan | Check | $6,000.00 |

(*See* Radiance Fact Statement, Exs. 19, 20, 24, 26, 27, 28, and 29 (exhibits containing payment summaries, copies of checks, and wire receipts).)[9]

The Court will describe the transferors and transferees in the sections that follow.

### 1.   The Transferors

#### a.   Whigham Place

All but one of the transfers at issue were made by Whigham Place, an LLC subject to the First Charging Order.  (First Charging Order at 1.)  Whigham Place is an Alabama-based LLC that owns a commercial building in Tuscaloosa County, Alabama.  (*See Deposition of John F. Campbell*, dated Feb. 15, 2024 ("Debtor Deposition") at 11:17-23;[10] Radiance Fact Statement, Ex. 15 (Alabama Secretary of State business record for Whigham Place).)  Whigham Place generated rental income of $296,904.00 and $350,886.00 in 2019 and 2020, respectively, from leasing its commercial building. (Radiance Fact Statement, Ex. 22 (excerpts of the Debtor's 2019 and 2020 tax returns).)

The parties dispute whether Whigham Place is wholly owned by the Debtor himself, or an entity called Clairise Court LLC ("Clairise Court"), the latter being an entity wholly owned by the Debtor.  (*See Debtor's Schedule A/B: Property* ("Property

---

[9]    Radiance Capital's summaries of the transfers effectuated by check (included in the exhibits) list dates that are a few days after the dates written on the checks themselves.  The Court assumes that the dates on Radiance Capital's summaries reflect the dates in which the funds were received by the transferee's account.

[10]    The parties submitted excerpts of the Debtor Deposition in multiple filings in connection with the Motions including Exhibit 25 to the Radiance Fact Statement, Exhibit 1 to the Debtor Fact Statement, Exhibit 1 to the Radiance Fact Response, and Exhibit 1 to the Radiance Opposition.

Schedule"), Part 4, Question 19 (ECF Main Case Doc. # 7 at ECF p. 6).)  On the one hand, the Debtor's bankruptcy schedule submitted on August 25, 2023 listed the Debtor as the sole member of Whigham Place (*id.*), a financial statement signed by the Debtor represented that he wholly owned Whigham Place as of June 30, 2021 (Radiance Fact Response, Ex. 4 (financial statement)), and the Alabama Secretary of State website shows that the Debtor is the sole member of Whigham Place.  (*Id.*, Ex. 6 (Alabama Secretary of State printout for Whigham Place).)  On the other hand, the Debtor provided a copy of a document showing that, effective March 1, 2020, he transferred his interest in Whigham Place to Clairise Court.  (Debtor Fact Response, Ex. 2 (copy of assignment).)[11]  Ultimately, whether the Debtor made the transfers directly through his ownership of Whigham Place, or indirectly through his ownership of Clairise Court, has no bearing on the outcome of the Motions.

### b.    Antilles GP

One of the transfers at issue was made by Antilles GP, a Delaware LLC formed in 2013.  (Debtor Fact Response, Ex. 3 (Antilles GP certificate of formation).)[12]  The Debtor is the sole member of Antilles GP (*see* Property Schedule, Part 4, Question 19), and

---

[11]    Radiance Capital points out that no consideration was exchanged for the assignment.  (Debtor Deposition at 8:4-13.)  The Debtor responds that no consideration was exchanged because Whigham Place was insolvent at the time of the assignment.  (Debtor Opposition ¶ 10.)

[12]    The Debtor asserts that Radiance Capital failed to disclose to the Alabama District Court that many of the LLCs were non-Alabama entities.  (Debtor Fact Statement ¶ 6.)  This assertion is false.  Radiance Capital's predecessor, SEPH, disclosed this fact in each motion corresponding to the Charging Orders.  (*See Application For Charging Order Against John F. Campbell*, dated Oct. 14, 2013 ¶ 5 ("Although a few of the [LLCs] to be charged are not Alabama entities, this Court has jurisdiction over [the Debtor's] interest in the [LLCs], and the Statute does not require that the [LLCs] be made a party to an action seeking such an order.") (ECF Alabama Action Doc. # 22); *Second Application For Charging Order Against John F. Campbell*, dated Jan. 10, 2014 ¶ 6 ("Although the [LLCs] to be charged are not Alabama entities, this Court has jurisdiction over [the Debtor's] interest in his [LLCs] and the Statute does not require that the [LLCs] be made a party to an action seeking such an order.") (ECF Alabama Action Doc. # 37).)  The Debtor did not object to either motion, nor did he appeal either Charging Order.

Antilles GP ceased business operations in 2016.  (*See Statement of Financial Affairs*
("SOFA"), Part 11, Question 27 (ECF Main Case Doc. # 7 at ECF p. 25).)

### 2.   The Transferees and the Transfers at Issue

#### a.   Transfers to the Debtor

Twelve of the transfers listed in the above chart were made from Whigham Place

directly to the Debtor.  The Debtor confirmed that he received these distributions from

Whigham Place.  (Debtor Deposition at 39:18-40:1.)  Although he wholly owns

Whigham Place (either directly or indirectly through his ownership of Clairise Court),

the Debtor was not an employee of Whigham Place.[13]

#### b.   Transfers to Clairise Court

Eight of the transfers listed in the above chart were made from Whigham Place to

Clairise Court.  As stated above, Clairise Court is an entity wholly owned by the Debtor.

Whigham Place has no loan agreement with Clairise Court.  (Debtor Deposition at 12:6-

9.)  Whigham Place has no ownership interest in Clairise Court.  (*Id*. at 15:16-21.)  When

asked why he transferred funds from Whigham Place to Clairise Court, the Debtor

testified that he was transferring amounts he would have otherwise taken as salary:

> Q.   Why would [Whigham Place] be making a capital contribution to
> Clairise Court?
>
> A.   Well, I took money that otherwise I would have paid myself a salary
> and I contributed it to Clairise Court.

---

[13]    On his bankruptcy schedule filed in August 2023, the Debtor represented that he is employed as a
contractor with Able Builders LLC (another entity wholly owned by the Debtor described *infra*) earning
gross monthly wages of $11,500.00.  (*See Schedule I* ("Income Schedule"), Parts 1 and 2 (ECF Main Case
Doc. # 7 at ECF pp. 14-15).)  He also represented that he has been employed by Able Builders LLC for
eight years prior to his August 2023 bankruptcy filing.  (*Id*., Part 1, Question 1.)  Despite that
representation, the Debtor's 2019 and 2020 tax returns did not show any income from Able Builders LLC.
(*See Radiance Fact Statement*, Ex. 22 (excerpts of Debtor's 2019 and 2020 tax returns).)  Instead, the
Debtor represented to the IRS that he was employed by Clairise Court in those years and earned a total
income of only $1,250.00 in 2019 and $2,750.00 in 2020 from Clairise Court.  (*Id*.)

. . .

Q.     Instead of taking money out of Whigham Place, putting it into one of your accounts, personal accounts, and then paying it then to Clairise, you just paid it straight from Whigham to Clairise.  Is that what you're saying?

A.     Yes.

(Debtor Deposition at 16:3-20.)

### c.     Transfers to WB Property

Nine of the transfers listed in the above chart were made from Whigham Place to WB Property Management LLC ("WB Property").[14]  WB Property is wholly owned by the Debtor.  (Property Schedule, Part 4, Question 19.)  WB Property performs no business function and generates no income.  (Debtor Deposition at 24:1-12.)  Whigham Place has no loan agreement with WB Property.  (*Id*. at 12:6-9.)  Whigham Place has no ownership interest in WB Property.  (*Id*. at 15:16-21.)

At his deposition, the Debtor testified that he used WB Property's bank account "as a personal checking account."  (*Id*. at 23:9-10.)  Thus, the proceeds from the transfers to WB Property listed in the above chart were used to cover the Debtor's living expenses.  (*See id*. at 26:16-21, 27:9-21, 28:20-29:18.)

### d.     Transfer to Able Builders

One of the transfers listed in the above chart was made from Whigham Place to Able Builders, LLC ("Able Builders").  Able Builders is wholly owned by the Debtor.

---

[14]     There was some discussion during the Debtor's deposition that there were, at one point, two "WB Property" entities owned by the Debtor – one based in Alabama and another in Louisiana.  (*See* Debtor Deposition at 20:2-23:5.)  The Alabama entity eventually ceased to exist.  (*Id*.)  The Court assumes that the transfers to WB Property were made into an account held by the Louisiana entity.

(Property Schedule, Part 4, Question 19.)  According to the Debtor's bankruptcy schedule, he works as a contractor for Able Builders.  (Income Schedule, Parts 1 and 2.)  Able Builders obtained a Louisiana contractor's license in 2015, but that license lapsed, and it is currently not licensed to perform contractor work.  (Debtor Deposition at 31:16-32:7.)  Whigham Place has no loan agreement with Able Builders.  (*Id.* at 12:6-9.)  Whigham Place has no ownership interest in Able Builders.  (*Id.* at 15:16-21.)

When asked why he transferred $40,000.00 from Whigham Place to Able Builders, the Debtor testified that he was transferring amounts he would have otherwise taken as salary from Whigham Place:

> Q.     Why did Whigham Place write a check to Able Builders for forty thousand dollars?
>
> A.     It was an accumulation of salary I'd been paying myself from Whigham.
>
> Q.     Okay.  So instead of taking a salary directly into one of your accounts, you just paid it straight to Able Builders; is that correct?
>
> A.     Yes.

(Debtor Deposition at 32:8-16.)

### e.     Transfer to Marina Campbell

One of the transfers listed in the above chart was made from Antilles GP to Marina Campbell ("Marina").  Marina is the Debtor's ex-spouse.  (*See* SOFA, Part 4 (listing a completed divorce action).)  In his brief opposing the Radiance Capital Motion, the Debtor described the circumstances leading to the June 2017 transfer to Marina:

> [Antilles GP] returned capital in the amount of $35,508.73 to [the Debtor] in June 2017 which he then sent to his estranged wife . . . ; the payment was a return of the investment [the Debtor] made in 2013 in a hedge fund he set up and in which [Antilles GP] was the general partner.

(Debtor Opposition ¶ 16.)

### f.    Transfers to JP Morgan

Four of the transfers listed in the above chart were made from Whigham Place to JP Morgan Chase ("JP Morgan").  These transfers paid balances owed on three credit card accounts held in the name of "John F. Campbell Clairise Court LLC."  (*See* Radiance Fact Statement, Ex. 24 (JP Morgan credit card statements).)  The Debtor claims that he is not personally liable for the JP Morgan accounts, and instead, these debts were owed by Clairise Court.  (Debtor Fact Response at 1.)  Whether the credit card balances were owed by the Debtor or Clairise Court (or both of them), a review of the credit card statements indicates that the Debtor used the credit cards on an almost daily basis to cover all manner of expenses, including his personal expenses.  (*See* Radiance Reply, Exs. A, B, and C (credit cards statements).)  The expenses included routine charges (i) at gas stations, (ii) at grocery stores, (iii) for subscription services (Spotify, Hulu, Netflix, Prime Video), (iv) for newspaper subscriptions (Wall Street Journal, The Epoch Times), (v) at restaurants, (vi) with internet vendors (Amazon, eBay), (vii) at hardware stores, and (viii) at auto parts stores.  (*See id*.)  The statements also showed certain charges to pay attorney's fees including, as Radiance Capital points out (*see* Radiance Reply at 8), an attorney who specializes in divorce proceedings.

### C.    Pre-2018 Transfers

The record created by the instant Motions focuses, for the most part, on transfers from Whigham Place made during 2018 and thereafter.  However, in its motion for sanctions against the Debtor pending in Alabama District Court (described *infra*), Radiance Capital included numerous pre-2018 transfers from Whigham Place that were made following the entry of the Charging Orders.  (*See Motion for Sanctions Against*

*John F. Campbell for Violating Charging Order*, dated June 29, 2023 ¶ 14 ("Sanctions Motion") ("As evidenced by the records from Whigham Place's account at Marion Bank, from the date of the entry of the charging order on October 21, 2013, to December 5, 2022, approximately $725,296.45 has been distributed directly and indirectly to [the Debtor].") (ECF Alabama Action Doc. # 65); *see, e.g.*, *id.*, Ex. H.2 (showing forty pre-2018 transfers from Whigham Place's bank account directly to the Debtor by wire, check, or bank withdrawal).)

### D.     The Sanctions Motion and the Bankruptcy Filing

On June 29, 2023, Radiance Capital filed its Sanctions Motion in the Alabama Action requesting that the Alabama District Court hold the Debtor in contempt for his transfers totaling hundreds of thousands of dollars from Whigham Place in violation of the First Charging Order.  (*See* Sanctions Motion.)  The Alabama District Court entered a scheduling order requiring the Debtor to file a response to the Sanctions Motion by July 24, 2023, and subsequently extended such deadline to August 11, 2023.  (*See* ECF Alabama Action Doc. ## 66, 78.)  The Debtor did not file a response to the Sanctions Motion, and instead, filed a petition for relief under Chapter 7 of the Bankruptcy Code in this Court on August 11, 2023.  (ECF Main Case Doc. # 1.)  The Alabama Action and the Sanctions Motion were stayed by the Debtor's bankruptcy filing.  (ECF Alabama Action Doc. # 91 (order staying Alabama Action and requiring parties to apprise the Alabama District Court when the bankruptcy matter is concluded or relief from the automatic stay is obtained).)

### E.     This Adversary Proceeding

On March 5, 2024, Radiance Capital commenced the instant adversary proceeding against the Debtor by filing its *Adversary Complaint* ("Complaint") (ECF

Doc. # 1).  The Complaint's allegations largely tracked the facts set forth herein and

asserted three causes of action.  First, Radiance Capital alleges that the Debtor engaged

in a fraudulent scheme to transfer assets in violation of the Charging Orders for his own

use.  As a result, Radiance Capital has a claim under Alabama fraudulent transfer law

against the Debtor (separate from the Judgment debt), and such claim is excepted from

discharge as a debt for money obtained by "actual fraud" under 11 U.S.C. § 523(a)(2)(A).

(Complaint ¶¶ 51-55 ("Count I").)  Second, Radiance Capital alleges that the Debtor's

intentional violation of the Charging Orders resulted in a "willful and malicious injury"

to Radiance Capital within the meaning of 11 U.S.C. § 523(a)(6).  (*Id.* ¶¶ 56-62 ("Count

II").)  Third, Radiance Capital seeks a declaratory judgment that it has a perfected

security interest under the Charging Orders, which survive the bankruptcy discharge.

(*Id.* ¶¶ 63-68 ("Count III").)[15]

    The parties fully briefed both Motions, the Court heard oral argument on August

28, 2025, and took the matter under advisement.

## **DISCUSSION**

### A.    **Summary Judgment Standard**

    Under Rule 56 of the Federal Rules of Civil Procedure, made applicable hereto

pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary

judgment is proper "if the movant shows that there is no genuine dispute as to any

---

[15]    Count III included additional requests for declaratory judgment, but in its briefs and at oral
argument, counsel for Radiance Capital confirmed that it is only seeking a declaratory judgment regarding
the effect of the bankruptcy discharge on the Charging Orders.  (*See Transcript of Aug. 25, 2025 Hr'g* at
9:16-10:3, 29:7-16 ("MR. FONTENOT:  We may have included a request for monetary.  We're not asking
for that.  I don't think the law supports it.  So, it's strictly a ruling that these Charging Orders are valid. . .
. THE COURT:  So, it's only for finding that these Charging Orders are valid and survive bankruptcy[?]  . .
. MR. FONTENOT:  Correct.") (ECF Doc. # 107).)

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the burden of establishing that no genuine issue of material fact exists. *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 94 (2d Cir. 2012)).

Once the movant has carried its initial burden, "the nonmovant must set forth specific facts showing that there is a genuine issue for trial." *Bustamante*, 100 F.4th at 432 (citation omitted). When deciding whether a genuine dispute exists as to a material fact, all ambiguities must be resolved, and all reasonable inferences must be drawn, in favor of the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 651, 657 (2014) (per curiam). However, "[c]onclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact." *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)) (alteration omitted); *accord Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

When both parties move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*,

249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).  "However, where the motion and cross-motion seek a determination of the same issue, the Court may address them together."  *Jackson v. Harvest Cap. Credit Corp.*, No. 17 Civ. 5276 (JFK), 2020 WL 705084, at *5 (S.D.N.Y. Feb. 12, 2020), *aff'd*, 848 F. App'x 455 (2d Cir. 2021).  Here, the Radiance Capital Motion and the Debtor Motion seek determination of the same issue: whether the Court may grant judgment on any of the three Counts in the Complaint as a matter of law.  Therefore, the Court will address the Motions together.

## B.    Exceptions to Discharge Under 11 U.S.C. § 523(a)

Section 523(a) of the Bankruptcy Code enumerates twenty categories of debts that are excepted from an individual debtor's bankruptcy discharge.  11 U.S.C. § 523(a)(1) – (20).  The exceptions to discharge are "narrowly construed," and the creditor bears the burden of proving by a preponderance of the evidence that the debt is nondischargeable.  *Cazenovia Coll. v. Renshaw* (*In re Renshaw*), 222 F.3d 82, 86 (2d Cir. 2000).  Counts I and II invoke the exceptions set forth in subsections (a)(2)(A) and (a)(6).  Whether judgment may be granted as to either Count as a matter of law is addressed in the sections that follow.

## C.    Count I – "Actual Fraud" Exception Under Section 523(a)(2)(A)

Section 523(a)(2)(A) exempts from an individual debtor's bankruptcy discharge, among other things, "any debt . . . for money . . . to the extent obtained by . . . actual fraud . . . ."  11 U.S.C. § 523(a)(2)(A).  Courts typically rely on the common law of torts when analyzing "actual fraud" under section 523(a)(2)(A).  *Sharmat v. Gallen* (*In re Gallen*), 559 B.R. 349, 356 (Bankr. S.D.N.Y. 2016).  As stated, Radiance Capital argues that the Debtor's transfer of funds violated Alabama fraudulent transfer law and gave rise to a debt owed to Radiance Capital, separate from the Judgment, that is

nondischargeable under 11 U.S.C. § 523(a)(2)(A).  (*See* Complaint ¶ 55 ("[The Debtor's] actual fraud in connection with receiving these fraudulent transfers created a new debt separate from [Radiance Capital's] underlying [Judgment] against [the Debtor] and is an exception to discharge under 11 U.S.C. § 523(a)(2)(A).").)

The Eleventh Circuit's decision in *SE Prop. Holdings, LLC v. Gaddy* (*In re Gaddy*), 977 F.3d 1051 (11th Cir. 2020) ("*Gaddy*"), *cert. denied*, 141 S. Ct. 2514 (2021) addressed circumstances analogous to those present in the current case.  The debtor in *Gaddy* ("Gaddy") was a guarantor of loans to fund an Alabama real estate development project.  *Id*. at 1054.  The project ran into financial trouble, and Gaddy received a letter from the lender warning of a potential default.  *Id*.  Upon receipt of that letter, Gaddy began transferring his assets to family members and entities he controlled.  *Id*.  The creditor – SEPH[16] – sued Gaddy (and others) and obtained a $9.1 million judgment against Gaddy.  *Id*.  Gaddy filed bankruptcy, and SEPH commenced an adversary proceeding seeking a determination that its judgment debt was exempt from discharge as a debt for money obtained by actual fraud under 11 U.S.C. § 523(a)(2)(A) and a debt for willful and malicious injury under 11 U.S.C. § 523(a)(6).  *Id*.  Gaddy filed a motion for judgment on the pleadings, the Bankruptcy Court granted Gaddy's motion, and the District Court affirmed the dismissal.  *Id*. at 1055.

The Eleventh Circuit affirmed the lower courts' decisions.  On the section 523(a)(2)(A) nondischargeability claim, the court of appeals focused on the statutory requirement that the debt subject to the nondischargeability claim must be "obtained

---

[16]    The predecessor to Radiance Capital in the instant matter – SEPH – was a party in several decisions relevant to the instant ruling.

by" actual fraud.  *Id*. at 1056 (quoting 11 U.S.C. § 523(a)(2)(A)); *see also id*. ("That is, it prevents discharge of any debt respecting money, property, services, or . . . credit that the debtor has fraudulently obtained.") (quoting *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998)) (internal quotation marks omitted).  The debt at issue in the *Gaddy* case was an ordinary breach of contract judgment based on Gaddy's failure to fulfill his guarantor obligations.  *Id*.  Gaddy's fraudulent conduct – *i.e.*, his transfer of assets to family members and entities he controlled – happened years after Gaddy incurred the guarantor debt.  *Id*.; *see also id*. ("The money that the bank loaned is obviously not traceable to those later conveyances.").  Thus, the debt at issue was not *obtained by* fraud.

The Eleventh Circuit also rejected SEPH's argument[17] that the Supreme Court's decision in *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016) expanded section 523(a)(2)(A) to exempt from discharge claims premised on the debtor fraudulently transferring assets to hinder a creditor's collection efforts.  *Husky* resolved a circuit split over whether "actual fraud" under section 523(a)(2)(A) requires a false representation or encompasses other traditional forms of fraud that can be accomplished without a false representation.  *Id*. at 357.  The Supreme Court ruled that "actual fraud" can include "fraudulent conveyance schemes, even when those schemes do not involve a false representation."  *Id*. at 366.  In responding to a point raised in the dissenting opinion, Justice Sotomayor, writing for the majority, stated the following:

> It is of course true that the transferor does not "obtain" debts in a fraudulent conveyance.  But the recipient of the transfer – who, with the requisite intent, also commits fraud – can "obtain" assets "by" his or her participation in the fraud.  . . .  If that recipient later files for bankruptcy,

---

[17]     Radiance Capital makes the same argument in its briefs here.

any debts "traceable to" the fraudulent conveyance . . . will be nondischargeable under § 523(a)(2)(A).  Thus, at least sometimes a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A).  Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy, but they make clear that fraudulent conveyances are not wholly incompatible with the "obtained by" requirement.

*Id.* at 365 (citations, alterations, and footnote omitted).

The *Gaddy* Court explained that *Husky* did not aid SEPH's argument for three reasons.  First, *Husky* was factually distinguishable because the fraud debt owed by the bankruptcy debtor was different from the original debt, which was owed by a third party.  *Gaddy*, 977 F.3d at 1057.  In *Husky*, a corporation owed an ordinary debt to the creditor, and a corporate insider (*i.e.*, the bankruptcy debtor) subsequently became potentially liable to the creditor under a veil-piercing statute when he drained corporate assets.  *Id.* (citing *Husky*, 578 U.S. at 357-58).  Second, *Husky* did not eliminate the statutory requirement that the debt to be exempted must be "obtained by" fraud.  *Id.*; *see also id.* ("Instead, [the Supreme Court in *Husky* and the Seventh Circuit in an analogous case] merely recognized the possibility that fraudulent schemes lacking a misrepresentation – including fraudulent transfers of assets to avoid creditors – can satisfy the 'obtained by' requirement in some circumstances.").  Third, in *Husky*, the bankruptcy debtor's fraudulent acts (*i.e.*, draining corporate assets) created the debts at issue, whereas, the debt at issue in *Gaddy* was "obtained by" Gaddy's failure to fulfill his guarantor obligation.  *Id.* at 1057-58; *see also id.* at 1058 ("SEPH's assertions fail not because Gaddy did not engage in 'actual fraud' by conveying his assets but because the [real estate development] loans were not 'obtained by' fraud as required for exemption under § 523(a)(2)(A).").

Most pertinent to the instant matter, the *Gaddy* Court also rejected SEPH's alternative theory that Gaddy's transfers created a debt under Alabama fraudulent transfer law (separate from Gaddy's judgment debt), and such debt was nondischargeable. *Id*. at 1059. The Eleventh Circuit examined Alabama law and explained that the fraudulent transfer debt would impermissibly permit SEPH to recover twice for the same debt:

> Generally, Alabama permits only one recovery for a given harm. . . . Yet SEPH seeks a new judgment for the same debt. It already has a judgment against Gaddy for the unpaid Water's Edge guaranties. It now seeks a second judgment entitling it to the same damages. SEPH asserted below no independent, freestanding harm from the fraudulent transfers themselves; it complained only that the transfers kept it from collecting the underlying debt.

*Id*. at 1060 (citations omitted); *see also id*. ("Alabama law bars double recovery of compensatory damages for a fraud claim and a contract claim based on a single transaction.") (quoting *Braswell v. ConAgra, Inc.*, 936 F.2d 1169, 1173 (11th Cir. 1991)).

Here, Count I of Radiance Capital's Complaint is substantially similar to SEPH's alternative theory in *Gaddy*. For the reasons stated in *Gaddy*, Radiance Capital's potential fraudulent transfer claim against the Debtor is barred because it seeks a second recovery for the same harm, *i.e.*, the Debtor's failure to pay Radiance Capital the amount owed under the Judgment. Radiance Capital has not alleged a separate fraud perpetrated by the Debtor and "complain[s] only that the transfers kept it from collecting the underlying debt." *Id*. at 1060. The underlying debt at issue – the Judgment – was not "obtained by" fraud; rather, the Judgment debt is based on the Debtor's failure to repay amounts owed under a loan.

Further, for the reasons stated in *Gaddy*, this Court rejects Radiance Capital's argument that *Husky* expanded the nondischargeability exemption in section 523(a)(2)(A) to include fraudulent transfer claims premised solely on a debtor's transfer of assets to hinder a creditor's collection efforts. The Supreme Court in *Husky* outlined a hypothetical in which a "recipient" of a transfer commits, or participates in, fraud with "requisite intent" and later files for bankruptcy. *Husky*, 578 U.S. at 365. In such "rare" circumstance, debts "traceable to" the fraudulent transfer could be nondischargeable under section 523(a)(2)(A). *Id.* (citation omitted). The facts here do not match *Husky*'s hypothetical. As stated above, the underlying debt at issue is based on the Debtor's default of a business loan. The Debtor did not obtain the loan by committing fraud. Further, the money loaned to the Debtor by Vision Bank in 2007 "is obviously not traceable" to the transfers from the LLCs years later. *Gaddy*, 977 F.3d at 1056.

The facts here depart from *Gaddy* in one respect. Radiance Capital obtained entry of the Charging Orders in Alabama District Court granting it a lien on the Debtor's ownership interest in the LLCs and entitling Radiance Capital to distributions otherwise payable to the Debtor. However, a charging order under Alabama law does not provide the judgment creditor with the same rights generally enjoyed by a secured creditor. Although "[a] charging order constitutes a lien on the judgment debtor's transferable interest"[18] (ALA. CODE § 10A-5A-5.03(c); *accord* First Charging Order at 1 (granting a

---

[18]    A "transferable interest" was recently described by the Alabama Supreme Court as follows:

A "transferable interest" is "a member's right to receive distributions from a limited liability company or a series thereof." § 10A-5A-1.02(t), Ala. Code 1975. "Distribution" is defined as "a transfer of money or other property from a limited liability company, or series thereof, to another person on account of a transferable interest." § 10A-5A-1.02(h). A "distribution" does not include "amounts constituting reasonable compensation for present or past services or reasonable payments made in the ordinary course of the

lien against the Debtor's "financial interests" in the LLCs)), the judgment creditor has "no right to foreclose . . . upon the charging order, the charging order lien, or the judgment debtor's transferable interest." ALA. CODE § 10A-5A-5.03(f).  Nor can a judgment creditor "obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property" of the charged entity.  *Id.*  Rather, the judgment creditor "has only the right to receive any distribution or distributions to which the judgment debtor would otherwise be entitled in respect of the transferable interest." ALA. CODE § 10A-5A-5.03(a); *see also* ALA. CODE § 10A-5A-5.03(f) (stating that this section provides the "exclusive remedy" for the satisfaction of the judgment from the judgment debtor's transferable interest); *accord* ALA. CODE § 10A-5A-5.03 editor's notes to subsection (d) ("This provision clarifies that a member or transferee whose transferable interest has been charged does not lose any of the member's or transferee's rights, other than the right to receive distributions from the limited liability company to the extent of the charging order.").

In fact, in another case with facts similar to the current circumstances – *SE Prop. Holdings, L.L.C. v. Green* (*In re Green*), 968 F.3d 516 (5th Cir. 2020) ("*Green*") – the Fifth Circuit dismissed a section 523(a)(2)(A) nondischargeability claim notwithstanding the fact that the judgment creditor in that case (again, SEPH) was the beneficiary of a charging order under Alabama law:

> SEPH says Green hatched [a fraudulent transfer scheme] when he made disguised distributions to himself in violation of the charging order, which

---

limited liability company's activities and affairs under a bona fide retirement plan or other benefits program."  § 10A-5A-4.06(e), Ala. Code 1975.

*SE Prop. Holdings, LLC v. Harrell* (*Ex Parte SE Prop. Holdings, LLC*), 353 So.3d 533, 537-38 (Ala. 2021) ("*Ex Parte SEPH*").

> required certain of Green's companies to distribute to SEPH any amounts
> that become due or distributable to Green.
>
> . . .
>
> SEPH stumbles, however, on § 523(a)(2)(A)'s "obtained by" requirement.
> Even assuming that Green engaged in a fraudulent scheme, SEPH has not
> produced facts to suggest that Green *obtained* a debt from his alleged
> fraud; therefore, SEPH has not raised a genuine dispute of material fact.

*Green*, 968 F.3d at 521 (alteration and quotation marks from references to the record

omitted). The existence of the Charging Orders here does not change the result on

Radiance Capital's claim under section 523(a)(2)(A).

For the reasons stated, Count I must be dismissed.

## D. Count II – "Willful and Malicious" Exception Under Section 523(a)(6)

Whereas the Debtor's violations of the Charging Orders do not play a meaningful

role in Count I, they play a prominent role in the disposition of Count II. Section

523(a)(6) exempts from an individual debtor's bankruptcy discharge "any debt . . . for

willful and malicious injury by the debtor to another entity or to the property of another

entity." 11 U.S.C. § 523(a)(6). The "word 'willful' in (a)(6) modifies the word 'injury,'

indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a

deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61

(1998) (emphases in original). Further, section 523(a)(6) encompasses "intentional

torts" rather than "negligent or reckless torts," and intentional torts "generally require

that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61-62

(quoting RESTATEMENT (SECOND) OF TORTS § 8A, Comment *a*, p. 15 (1964)) (emphasis in

original).

"The injury caused by the debtor must also be malicious, meaning 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Navistar Fin. Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 87 (2d Cir. 1996)).  "Malice may be implied by the acts and conduct of the debtor in the context of the surrounding circumstances."  *Id.* (citation, internal quotation marks, and alteration omitted).

In Count II, Radiance Capital argues, among other things, that the Debtor "knowingly violated the [Charging Orders] in an effort to thwart [Radiance Capital's] security interest in the distributed funds."  (Complaint ¶ 60.)  "Failure to obey a court order constitutes willful and malicious conduct, and a judgment against a defiant debtor is excepted from discharge."  *Williams v. Int'l Bhd. of Elec. Workers Local 520* (*In re Williams*), 337 F.3d 504, 512 (5th Cir. 2003) (citing *PRP Wine Int'l, Inc. v. Allison* (*In re Allison*), 176 B.R. 60, 64 (Bankr. S.D. Fla. 1994)); *see also O'Connor v. Trost* (*In re O'Connor*), Adversary Nos. 07-21012, 08-2013, 2010 WL 3909726, at *6 (Bankr. W.D. La. Oct. 1, 2010) (quoting *Williams* and citing additional supporting authorities). Quoting a Western District of New York bankruptcy court decision, the Fifth Circuit in *Williams* explained that damages resulting from an intentional violation of a court order are *ipso facto* the result of "willful and malicious" injury:

> [W]hen a court of the United States . . . issues an injunction or other protective order telling a specific individual what actions will cross the line into injury to others, then damages resulting from an intentional violation of that order as is proven either in the Bankruptcy Court or, so long as there was a full and fair opportunity to litigate the questions of volition and violation, in the issuing court are *ipso facto* the result of a "willful and malicious injury."

> This is because what is "just" or "unjust" conduct as between the parties has been defined by the court.  . . .  An intentional violation of the order is

> necessarily without "just cause or excuse" and cannot be viewed as not
> having the intention to cause the very harm to the protected persons that
> order was designed to prevent.

*Williams*, 337 F.3d at 512 (quoting *Buffalo Gyn Womenservices, Inc. v. Behn* (*In re*

*Behn*), 242 B.R. 229, 238 (Bankr. W.D.N.Y. 1999)).[19]

It follows, therefore, that monetary sanctions levied against a party for

intentionally violating a court order are *per se* nondischargeable under section

523(a)(6).  As one court observed:

> [W]here there is an order of a court finding a debtor in contempt for
> violating an earlier court order, for purposes of establishing a willful and
> malicious injury under § 523(a)(6), it is conclusively presumed or
> established by that contempt order that (1) the debtor's conduct caused an
> injury to the other party, and (2) that the sanctions awarded are a "debt . . .
> for [that] injury . . . ."  In other words, a debt arising as a result of a
> violation of a court order does not require proof of an injury beyond
> showing that the court order was knowingly violated, and neither the
> existence of an injury nor the amount (or reasonableness) of damages
> from an injury need be established beyond showing that the court imposed
> sanctions on the debtor for the violation.

*Boehm v. Papst* (*In re Papst*), Adversary No. 06-3026, 2007 WL 274969, at *7 (Bankr.

W.D. Tex. Jan. 29, 2007).

A party who violates a charging order under Alabama law may be held in

contempt.  *See* ALA. CODE § 10A-5A-5.03 editor's notes to subsection (f) ("This provision

attempts to eliminate the problems encountered by overly broad court orders.  *The*

*provision was not intended, nor should it be interpreted, to prevent a court from*

*enforcing its charging order against the person who violates the charging order*.")

---

[19]    The Fifth Circuit stated that this principle is not limited to violations of injunctions.  *Williams*,
337 F.3d at 512 ("While the *Behn* opinion deals specifically with the violation of an injunction, the Agreed
Judgment entered by the district court served a similar purpose of protecting the Union from further
breaches of the CBA.").

(emphasis added); *cf. Ex Parte SEPH*, 353 So.3d at 539 (reversing denial of request to hold a party in contempt for violating an Alabama charging order where the trial court denied such request without holding a contempt hearing); *see also id*. ("In the present case, the evidence in the record demonstrates that Harrell [violated the charging order]. Thus, the trial court exceeded its discretion in denying SEPH's petition based on the materials in the record.") (citation omitted).

The record here establishes that the Debtor knowingly violated the Charging Orders. The Charging Orders required the LLCs to make distributions to Radiance Capital that are otherwise payable to the Debtor "by reason of any interest he owns in the [LLCs]" until the Judgment was fully satisfied. (First Charging Order at 1; Second Charging Order at 1.) The Charging Orders also required the LLCs to notify Radiance Capital each time a distribution subject to the order was made. (First Charging Order at 2; Second Charging Order at 2.) In contravention of the orders, the Debtor caused Whigham Place to make dozens of transfers directly to the Debtor throughout the decade following the entry of the Charging Orders. Whigham Place is a single-asset real estate company that collects rent proceeds from its ownership of commercial real estate in Alabama, and the Debtor provided no business justification for Whigham Place's transfers of funds to the Debtor. These transfers must therefore be viewed as transfers on account of the Debtor's ownership and control of Whigham Place in violation of the Charging Orders.

The remainder of the transfers were technically made to third parties but were for the benefit of the Debtor. Transfers from Whigham Place to WB Property were used to fund the Debtor's living expenses as he used WB Property's bank account "as a personal

checking account." (Debtor Deposition at 23:9-10; *see also id.* at 26:16-21, 27:9-21, 28:20-29:19.)

Transfers from Whigham Place to Clairise Court and Able Builders represented funds that were purportedly payable to the Debtor but were instead deposited into the accounts of the latter two entities. (*Id.* at 15:3-20; 32:8-16.) The Debtor characterized these as "salary" payments to himself (*id.*), but that assertion lacks merit. Although the Debtor owns Whigham Place, he is not an employee of, or otherwise entitled to salary from, Whigham Place.[20]

The transfer from Antilles GP to Marina similarly represented funds that were purportedly payable to the Debtor but were instead transferred to Marina. The Debtor admitted that he caused Antilles GP to return a prior capital contribution to him and transferred those funds to Marina. (Debtor Opposition ¶ 16.) The return of a prior capital contribution can be seen as nothing other than a distribution on account of the Debtor's equity interest in Antilles GP.

Last, the transfers from Whigham Place to JP Morgan paid sizeable balances for three JP Morgan credit card accounts held in the name of "John F. Campbell Clairise Court LLC." As set forth above, the Debtor routinely used the credit cards to cover his personal expenses including attorney's fees to his divorce attorney.

---

[20]    The Debtor stated in his 2019 and 2020 tax returns that he was an employee of Clairise Court in those years (Radiance Fact Statement, Ex. 22), and stated in his bankruptcy schedule that he is employed by Able Builders. (Income Schedule, Parts 1 and 2.) Since Whigham Place was the transferor of these transfers, it cannot be said that the transfers represented payment of salary by Clairise Court or Able Builders to the Debtor. Further, (i) the transfers from Whigham Place to Clairise Court ($57,390.00) far exceeded the Debtor's reported income from Clairise Court ($4,000.00) for those years, and (ii) the sole transfer from Whigham Place to Able Builders occurred in November 2022, and Able Builders' license to perform contractor work lapsed a "couple of years" prior to the Debtor's February 2024 deposition. (Debtor Deposition at 31:16-32:7.) Thus, any assertion that these transfers were used to pay the Debtor's Clairise Court or Able Builders salary would be questionable at best.

The Debtor does not dispute that he was aware of the Charging Orders when he made the transfers from Whigham Place and Antilles GP. Instead, the Debtor relies on two arguments. First, the Debtor points out that the IRS has a lien over all of the Debtor's assets that is senior to Radiance Capital's liens created by the Charging Orders. The IRS lien, the Debtor argues, nullifies the effect of the Charging Orders. (*See* Debtor Brief ¶ 3 ("[The Charging Orders have] at all times been subordinate to the IRS Lien, and [Radiance Capital] has not been entitled to any payments from the charged entities.").)

This argument lacks merit. As the Supreme Court explained, absent a stay pending appeal, a party subject to an order must comply with the order "promptly" and may not make "private determinations" about the legal effect of that order:

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.

*Maness v. Meyers*, 419 U.S. 449, 458 (1975). Here, the Debtor did not appeal, or even object to the entry of, either Charging Order. He has never argued to the Alabama District Court that the IRS lien negates the effect of the Charging Orders. His conclusion about the effect of the IRS lien is a "private determination of the law," which does not excuse his refusal to comply with the Charging Orders. *Id.*[21]

---

[21]    The Court's ruling should not be interpreted to mean that the IRS is foreclosed from subsequently appearing in the Alabama District Court or elsewhere to assert its rights against the Debtor's assets. That matter is simply not before this Court. *Accord Renteria v. Canepa*, No. 3:11-cv-00534-RCJ-CWH, 2013 WL 3155348, at *2 (D. Nev. June 19, 2013) ("The Court also agrees that no controversy between Plaintiffs and the IRS is before the Court. It is only for this Court to determine whether the charging order

Moreover, the Debtor's argument makes little sense as a matter of practicality. The Debtor is not paying the tax debt he owes to the IRS, and the IRS has apparently not foreclosed on the Debtor's assets even though its lien "was perfected on September 1, 2010." (Debtor Brief ¶ 2.) In the meantime, the Debtor may not use the prospect of a future tax foreclosure as a talisman to deny the rights of his other creditors.

Second, the Debtor asserts that Radiance Capital and its counsel knew, or should have known, of transfers from the LLCs in 2014 but "did not complain" to the Debtor. (Debtor Brief ¶ 21 ("[S]ince SEPH, [Radiance Capital and its attorney] knew, or should have known, of the transfers since January 2014 because of the numerous subpoenas they had served to acquire financial records, and did not complain to [the Debtor] or take any action, [the Debtor] had no reason to believe that [Radiance Capital] considered the transfers against its interest.") (emphasis omitted).) Radiance Capital disputes the Debtor's assertion and responds that it did not learn of the transfers until much later. (*See generally* Fontenot Affidavit.)

This argument too lacks merit irrespective of when Radiance Capital learned of the transfers. The onus is on the party to whom a court directs an action to promptly comply with that directive. *Maness*, 419 U.S. at 458. The party who benefits from a court order does not have a duty to follow up with the losing party to ensure compliance with the order. In fact, the Charging Orders placed an *affirmative duty on the Debtor* to report to Radiance Capital transfers subject to the orders – a duty that the Debtor has completely ignored. Thus, the Debtor's argument – that SEPH and Radiance Capital

---

requested is available under state law, which it is[.] . . . If the IRS or the entities to be charged wish to challenge Plaintiff's subsequent attempts to enforce the charging order under federal priority statutes, that is a separate matter.").

waived their rights under the Charging Orders because they knew (or should have known) that the Debtor had been in continuous violation of those orders from their very entry – is utterly meritless.

Based on the legal precedent cited above, the Debtor's knowing violations of the Charging Orders constitute "willful and malicious" conduct and the monetary sanctions stemming from such violations are nondischargeable under 11 U.S.C. § 523(a)(6). Radiance Capital sought monetary sanctions against the Debtor by filing the Sanctions Motion in June 2023, but the Debtor filed his bankruptcy petition before the Alabama District Court could adjudicate the Sanctions Motion. Although this Court has exclusive jurisdiction to determine whether a claim is nondischargeable under 11 U.S.C. § 523(a)(6) (*see supra* statement of jurisdiction), it must abstain from determining what the amount and scope of a sanction should be. That is because "the power to sanction contempt is jurisdictional." *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 970 (11th Cir. 2012). Specifically:

> The power of a court to make an order carries with it the equal power to punish for a disobedience of that order, and the inquiry as to the question of disobedience has been, from time immemorial, the special function of the ordering court. To submit the question of disobedience to another tribunal would operate to deprive the proceeding of half its efficiency. The sole adjudication of contempts, and the punishments thereof belong exclusively to each respective court.

*Id*. (quoting *In re Debs*, 158 U.S. 564, 594-95 (1895)) (alterations omitted).

Therefore, while it is appropriate for this Court to determine whether the Debtor engaged in "willful and malicious" conduct within the meaning of 11 U.S.C. § 523(a)(6), the Alabama District Court must be the court that issues the contempt order for the Debtor's violations of the Charging Orders. To facilitate the Alabama District Court's

determination of appropriate sanctions, this Court will modify the automatic stay *sua sponte* to permit Radiance Capital to continue prosecution of the Sanctions Motion or otherwise seek sanctions for the Debtor's violations of the Charging Orders in the Alabama Action. *In re Laventhol & Horwath*, 139 B.R. 109, 116 n.6 (S.D.N.Y. 1992) (bankruptcy court may *sua sponte* modify the automatic stay to allow litigation to proceed in another forum); *Putnam Cty. Sav. Bank v. Bagen* (*In re Bagen*), 185 B.R. 691, 701 n.15 (Bankr. S.D.N.Y. 1995) (same).

**E.    Count III – Declaratory Judgment**

Bankruptcy courts may issue a declaratory judgment pursuant to Rule 7001(i) of the Federal Rules of Bankruptcy Procedure,[22] and the Declaratory Judgment Act, 28 U.S.C. § 2201 ("Act"), governs the availability of declaratory relief in federal courts. *Golden v. Nat'l Collegiate Student Loan Tr. 2006-4 (NCT 2006)* (*In re Golden*), 671 B.R. 544, 585 (Bankr. E.D.N.Y. 2025) (citation omitted). The Act provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act "has a broad remedial purpose and, therefore, should be construed liberally." *Katz v. Wagner* (*In re Metiom, Inc.*), No. 01-12840 (RLB), 2002 WL 433588, at *2 (S.D.N.Y. Feb. 25, 2002) (quotation omitted). Bankruptcy courts have the "power to issue declaratory judgments when the matter in controversy regards the administration

---

[22]    Federal Bankruptcy Rule 7001(i) provides that a party may commence an adversary proceeding "to obtain a declaratory judgment related to any proceeding described in" Rule 7001(a) – (h).

of a pending bankruptcy estate." *Golden*, 671 B.R. at 586 (quoting *Sears, Roebuck and Co. v. O'Brien*, 178 F.3d 962, 964 (8th Cir. 1999)).

In Count III, Radiance Capital seeks a declaratory judgment that the liens created by the Charging Orders survive the Debtor's bankruptcy discharge. "[L]iens pass through bankruptcy unaffected" unless they are avoided[23] or otherwise addressed. *City of Concord v. N. New England Tel. Operations LLC* (*In re N. New England Tel. Operations LLC*), 795 F.3d 343, 346 (2d Cir. 2015) (quoting *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992)); *see also In re Gierlinger*, 580 B.R. 314, 317 (Bankr. W.D.N.Y. 2017). The same is true for liens created by charging orders. *See Binder v. Binder PC v. Barnhart*, 399 F.3d 128, 129-30 (2d Cir. 2005) (noting that a charging lien securing payment of attorney's fees would survive a bankruptcy discharge); *see also Santangelo v. Clarvit* (*In re Santangelo*), 643 B.R. 481, 488 (Bankr. M.D. Ala. 2022) (bankruptcy discharge did not enjoin attorney who represented debtor in a defamation action from enforcing pre-petition charging lien).

Here, the liens created by the Charging Orders are valid and have not been avoided or otherwise addressed in this bankruptcy case. Therefore, such liens survive the Debtor's bankruptcy discharge.

---

[23]    The Debtor previously moved to avoid the Charging Orders under 11 U.S.C. § 522(f), but the Court denied the Debtor's motion. (*See Order Denying Motion to Avoid Judicial Liens*, dated October 31, 2024 (ECF Main Case Doc. # 55).)

## <u>CONCLUSION AND ORDER</u>[24]

For the reasons stated, it is Ordered that:

- as to Count I, the Debtor Motion is GRANTED, and Count I is DISMISSED;

- as to Count II, the Radiance Capital Motion is GRANTED to the extent of concluding that any sanction issued by the Alabama District Court based on the Debtor's violations of the Charging Orders is nondischargeable under 11 U.S.C. § 523(a)(6);

  o the automatic stay pursuant to 11 U.S.C. § 362(a) is modified *sua sponte* to permit Radiance Capital to continue prosecution of the Sanctions Motion or otherwise seek sanctions for the Debtor's violations of the Charging Orders in the Alabama Action;

  o counsel to Radiance Capital shall send a copy of this Memorandum Decision and Order to the Judge presiding over the Alabama Action;

- as to Count III, the Radiance Capital Motion is GRANTED to the extent of concluding that the liens created by the Charging Orders survive the Debtor's bankruptcy discharge;

- the Motions are otherwise DENIED; and

- the parties shall appear for a status conference on January 29, 2026 at 10:00 a.m. to discuss any remaining matters in this adversary proceeding.


Dated:      January 12, 2026
            Poughkeepsie, New York

                              /s/ *Kyu Y. Paek*
                              Honorable Kyu Y. Paek
                              United States Bankruptcy Judge

---

[24]     Arguments made by the parties but not specifically addressed herein have been considered by the Court and rejected or rendered moot by the Court's ruling.